UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL M.-H.,

Petitioner,

v.

NOEM, *et al.*,

Respondents.

Case No. 2:26-cv-00449-KES-FJS (HC)

(A-Number: 216-644-998)

ORDER GRANTING PETITIONER'S MOTION TO PROCEED *IN FORMA PAUPERIS*
(ECF No. 2)

ORDER DENYING WITHOUT PREJUDICE PETITIONER'S MOTION TO APPOINT COUNSEL
(ECF No. 3)

ORDER TO CORRECT PETITIONER'S MAILING ADDRESS

FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS
(ECF No. 1)

FOURTEEN (14) DAY DEADLINE

Petitioner Daniel M.-H.[1] ("Petitioner") is an immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the court omits petitioner's full name, using only the first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court

Petitioner filed the instant petition on February 17, 2026, together with a motion to proceed *in forma pauperis* and a motion to appoint counsel. (ECF Nos. 1–3.) He challenges his detention since August 29, 2023, by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond hearing before an immigration judge where the government must justify his continued detention by clear and convincing evidence that he presents a risk of flight or danger in light of reasonable available alternatives to detention, or where he should be ordered released with appropriate conditions of supervision, if necessary. (ECF No. 1.)

On April 9, 2026, Respondents filed a response to the petition. (ECF No. 10.) Petitioner did not file a traverse or otherwise respond to Respondents' filing.[2]

For the reasons discussed below, the court recommends that the petition be denied.

I. BACKGROUND

Petitioner is a native and citizen of Guatemala. (ECF No. 1 at 2, 4.)

On or about August 17, 2023, Petitioner entered a guilty plea and was convicted in the Third Judicial District Court, Canyon County, State of Idaho, for the offense of Children – Injury to Child, in violation of Idaho Code § I18-1501(1) and sentenced to a suspended term of nine years in prison and a five-year term of felony probation. (ECF Nos. 10-2 at 2, 10-3.) Petitioner

---

Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-lsuggestion_cacm_0.pdf.

[2] The court's orders mailed to Petitioner's address of record have been repeatedly returned as undeliverable. (*See* docket entries dated March 2, 2026, March 6, 2026, April 6, 2026, April 22, 2026, and May 4, 2026.) A review of the U.S. Immigrations and Customs Enforcement Online Detainee Locator System website as of the date of this order indicates that Plaintiff is housed at Golden State Annex. The court takes judicial notice of public information stored on the Online Detainee Locator System website. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d. 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial notice of state agency records). The court finds it appropriate to direct the Clerk of the Court to update Petitioner's address accordingly.

has been in continuous Department of Homeland Security ("DHS") custody since approximately August 29, 2023. (ECF No. 1 at 7.)

On November 30, 2023, the immigration court ordered Petitioner removed.[3] (*See* ECF No. 10-4 at 3–4.) Petitioner appealed the removal order to the Board of Immigration Appeals ("Board"). (*See id.*) On April 26, 2024, the Board dismissed Petitioner's appeal. (ECF No. 10-5.) Petitioner appealed the dismissal to the Ninth Circuit Court of Appeals in *Martinez-Hernandez v. Bondi*, Case No. 24-2966 (9th Cir. 2024). On July 9, 2026, the Ninth Circuit issued a memorandum opinion denying the petition. *Martinez-Hernandez*, Case No. 24-2966, Doc. 60. The Ninth Circuit issued its mandate on August 31, 2026. *Id.* at Doc. 61.

On May 15, 2025, Petitioner filed a motion for custody redetermination. At a hearing the next day, the immigration court denied the request for a custody redetermination. (ECF No. 10-4.) The immigration judge found that the removal order became administratively final on April 26, 2024, and the immigration court therefore lacked jurisdiction to consider Petitioner's custody as he was subject to a final order of removal. (*Id.* at 4.) The immigration judge further held, in the alternative, that if the court did possess jurisdiction, the court would still deny release on bond, finding that Petitioner was a danger to the community due to the recency and severity of Petitioner's felony conviction. (*Id.*)

Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to his felony conviction for injury to a child. (ECF No. 10 at 2–3.) Specifically, Respondents assert that Petitioner's conviction involving sexual abuse of a minor constitutes a Crime Involving Moral Turpitude ("CIMT") conviction per 8 U.S.C. § 1182(a)(2)(A)(i). (*Id.* at 3.)

---

[3] Respondents did not provide a copy of the immigration judge's order, but the existence of the order is supported by other documents in the record and appears uncontested. (*See* ECF No. 10-4 at 4 (Memorandum Decision and Order of the immigration court memorializing May 16, 2025, custody redetermination hearing and noting that an order of removal was entered on November 30, 2023); ECF No. 10-5 (April 26, 2024, Board of Immigration Appeals order dismissing Petitioner's appeal of the November 30, 2023, decision).)

II. DISCUSSION

A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under section 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

B. Mandatory Detention under 8 U.S.C. § 1226(c)

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). Section 1226(c)(1)(A) mandates detention of any alien convicted of a crime involving moral turpitude pursuant to 8 U.S.C. § 1182(a)(2). Petitioner's conviction under Idaho Code § I18-1501(1), Children – Injury to Child, based on factual allegations that Petitioner engaged in sexual abuse of a minor, (ECF Nos. 10-2, 10-3), is categorically a crime involving moral turpitude. *See Nunez v. Holder*, 594 F.2d 1124, 1132 (9th Cir. 2010) (in context of sexual offenses, whether the crime involves moral turpitude turns on whether there is (1) actual harm or (2) a protected class of victim). Thus, Respondents' position that Petitioner is subject to mandatory detention under section 1226(c) is correct.

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In *Jennings*, the Supreme Court held that "together with

§ 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." *Id.* at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* Here, Petitioner does not meet the conditions for release. Therefore, statutorily, section 1226(c) mandates detention.

C. <u>Due Process in Prolonged Immigration Detention</u>

Nevertheless, Petitioner contends his detention has become unreasonably prolonged because there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends he has been unreasonably detained for three years without a "proper" bond hearing, in violation of his due process rights. He argues that due process requires he should be released from custody or provided a bond hearing. (ECF No. 1.) Respondents reassert that Petitioner is subject to mandatory detention pursuant to section 1226(c), and the due process concerns of indefinite detention do not apply here because "detention under § 1226(c) has a "definite termination point": the conclusion of removal proceedings." (ECF No. 10 at 4 (quoting *Jennings*, 583 U.S. at 304).) Respondents argue that the length of Petitioner's custody reflects, in part, his pursuit of available remedies, including requesting a bond hearing review, administrative appeals to the Board, and seeking multiple continuances in his appeal before the Ninth Circuit. (ECF No. 10 at 4.)

Although the Ninth Circuit has clarified that there is no statutory right to a detention hearing under section 1226(c), whether the Due Process Clause imposes a right to a detention hearing is an open question. *Avilez v. Garland*, 69 F.4th 525, 538 (9th Cir. 2023). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) ("[I]t remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration

detention statute.") (emphasis in original). There is a split among the circuits that have addressed whether the Due Process Clause affords section 1226(c) detainees a right to a bond hearing. *Compare Black v. Decker*, 103 F.4th 133, 148–50, 155 (2d Cir. 2024), *with Banyee v. Garland*, 115 F.4th 928, 933–34 (8th Cir. 2024).

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore*, 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit has noted that many courts have applied the *Mathews*[4] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims")). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Still, many district courts in the Ninth Circuit, including this court, have employed the *Mathews* test in evaluating whether due process entitles a petitioner to a bond hearing when subjected to

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

prolonged detention. *See, e.g., Flores v. Jimenez v. Andrews*, 1:25-cv-01104-KES-HBK, 2026 WL 1040948 (E.D. Cal. Apr. 16, 2026). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206-07. Thus, the court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a second bond hearing in a section 1226(c) detention.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Here, Petitioner has been detained approximately three years. When analyzing a detention under section 1226(a) of a lesser duration, the Ninth Circuit "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011)). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh*, 638 F.3d at 1208.

In *Rodriguez Diaz*, the Ninth Circuit held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." 53 F.4th at 1213. In this case, Petitioner requested and was given a bond

hearing on May 16, 2025. (ECF No. 10-4.) Although the immigration court first held that it did not have jurisdiction to consider Petitioner's eligibility due to his seemingly final order of removal, the court went on to find that if it did possess jurisdiction, it would nevertheless deny release on bond and find that Petitioner posed a risk of danger to the community. (ECF No. 10-4 at 4.) Respondents argue, and Petitioner does not contest, that Petitioner had the opportunity to present evidence and arguments at that earlier bond hearing.

In addition, Respondents allege that the prolonged detention is due in part to Petitioner's own actions. *Cf. Rodriguez Diaz*, 53 F.4th at 1207–08 (analyzing 18 U.S.C. § 1226(a)). *See Demore*, 538 U.S. at 530–31 (discussing typical timeframe for processing claims under section 1226(c)). ICE detained Petitioner on or about August 29, 2023. (ECF No. 1 at 7.) An immigration judge ordered Petitioner removed on November 30, 2023, and Petitioner appealed to the Board and then to the Ninth Circuit. (ECF Nos. 10-4, 10-5.) While his appeal was pending before the Ninth Circuit, Petitioner requested five extensions of time to file his opening brief and two extensions of time to file his reply brief.[5] *Martinez-Hernandez*, Case No. 24-2966 (9th Cir. 2024), Docs. 21, 23, 25, 27, 29, 42, 48. Where the Ninth Circuit's original briefing schedule would have concluded in approximately September 2025, Petitioner did not submit his reply brief until April 23, 2026. *See id.* at Docs. 19, 53; *see Rodriguez Diaz*, 53 F.4th at 1208 ("We also cannot overlook that most of the period of [petitioner's] detention arose from the fact that he chose to challenge before the BIA and later this Court the IJ's denial of Immigration Relief"); *see Prieto-Romero v. Clark*, 534 F.3d 1053, 1063–65 & n.9 (9th Cir. 2008) (holding that a non-citizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order). Furthermore, Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." *Rodriguez Diaz*, 53 F.4th at 1208. In sum, Petitioner's detention of three years is substantially longer than the six-month presumptively reasonable period, but much of the delay is due to Petitioner's own actions. Thus, the first factor does not tip meaningfully in either party's favor.

---

[5] The court notes that the government also filed a request for an extension of time to file the answering brief. *Martinez-Hernandez*, Case No. 24-2966 (9th Cir. 2024), Doc. 38.

In the second factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. In this case, however, Petitioner is subject to mandatory detention because he was convicted of a CIMT: sexual abuse of a minor. (ECF No. 10-3.) Both the Board and the Ninth Circuit have affirmed Petitioner's removal order. (ECF No. 10-4); *Martinez-Hernandez*, No. 24-2966, Doc. 60. Assuming Petitioner does not seek or obtain further appellate review of his removal order, authorization for his detention shifts to 8 U.S.C. § 1231. *Avilez*, 69 F.4th at 535–36 (holding that section 1226(c)'s detention authority persists during judicial review of a removal order). With that shift to section 1231 comes another automatic detention. 8 U.S.C. § 1231(a)(2), *cited in Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). The court concludes that the probable value of offering a further bond hearing to mitigate the risk of erroneous deprivation given the specific status of Petitioner's appeal here is low.[6] Thus, the second factor weighs in favor of Respondents.

In the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). Yet as other courts have recognized, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field*

[6] In addition, Petitioner received a bond hearing where an immigration judge concluded, as an alternative ground for denial of release on bond, that Petitioner posed a risk of danger to the community. (ECF No. 10-4.) It does not appear Petitioner attempted to appeal the immigration court's decision. *Rodriguez Diaz* held that a section 1226(a) detainee who received an earlier bond hearing before an immigration judge could not tip the second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. Nevertheless, this court does not rely on the immigration judge's dictum regarding Petitioner's danger to the community in reaching the instant findings and recommendation.

*Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's susceptibility for removal based on a CIMT and on the government's understandable interest in seeing that aliens guilty of CIMT are readily removable. This third *Matthews* factor tips in Respondents' favor.

Petitioner has not carried his burden under the *Mathews* test. The prolonged period of detention is largely Petitioner's doing, he is subject to an order of removal that has been twice affirmed, and the veracity of the CIMT that gives rise to section 1226(c)'s application is not contested. Under these facts, the court concludes that due process does not require Petitioner be provided a bond hearing at this time.[7] The petition should be denied without prejudice to refiling in the future, should detention continue with no reasonable likelihood of removal in the foreseeable future.

## III. MOTION FOR APPOINTMENT OF COUNSEL

On February 17, 2026, Petitioner filed a motion for appointment of counsel. Title 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require." *See* Rule 8(c), Rules Governing Section 2254 Cases. In this case, the court is recommending the petition be dismissed. Therefore, the court does not find that the interests of justice require the appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore DENIED, without prejudice. (ECF No. 3.)

## IV. ORDER AND RECOMMENDATION

Based on the foregoing, the court HEREBY ORDERS as follows:

1. Petitioner's motion to proceed *in forma pauperis*, (ECF No. 2), is GRANTED;
2. Petitioner's motion to appoint counsel, (ECF No. 3), is DENIED, without prejudice; and
3. The Clerk of the Court is DIRECTED to update Plaintiff's mailing address to Golden State Annex.

Furthermore, the court HEREBY RECOMMENDS that the petition for writ of habeas corpus, (ECF No. 1), be DENIED, without prejudice.

---

[7] While not dispositive, the immigration court's alternative ground for denial of Petitioner's 2025 bond request, (ECF No. 10-4 at 4), is in harmony with this conclusion.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **September 8, 2026**

UNITED STATES MAGISTRATE JUDGE